IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRYAN REDMOND,                                    3:19-cv-02061-BR

            Plaintiff,                            OPINION AND ORDER

v.

STANDARD INSURANCE COMPANY, an
Oregon corporation; DEREK
SCHMALLE; and LISA
McGILLICUDDY,

            Defendants.

STEPHEN P. RICKLES
MARTIN W. JAQUA
The Rickles Law Firm, P.C.
1839 N.W. 24th Ave.
Portland, OR  97210
(503) 229-1850

            Attorneys for Plaintiff Bryan Redmond

DAVID J. RIEWALK
JESSICA E. WILCOX
Bullard Law
200 S.W. Market St., Ste. 1900
Portland, OR  97201
(503) 248-1134

            Attorneys for Defendants Standard Insurance Company
            and Derek Schmalle

1 – OPINION AND ORDER

**JOHN M. KREUTZER**
**AMANDA BRYAN**
Bullivant Houser Bailey P.C.
One S.W. Columbia St., Ste. 800
Portland, OR  97204
(503) 228-6351

   Attorneys for Defendant Lisa McGillicuddy

**BROWN, Senior Judge.**

  This matter comes before the Court on the Motions (#9), (#10), (#13) to Dismiss filed by Defendants Standard Insurance Company, Lisa McGillicuddy, and Derek Schmalle respectively. The Court concludes the record is sufficiently developed and oral argument is not required.

  For the reasons that follow, the Court **DENIES** Defendants' Motions.

<u>**BACKGROUND**</u>

  The following facts are taken from Plaintiff Bryan Redmond's Complaint and construed in Plaintiff's favor for purposes of these Motions. *See Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

  Plaintiff was employed by Standard Insurance as Senior Director of Procurement.  Schmalle and McGillicuddy were employees of Standard Insurance and were supervised by Plaintiff.

2 – OPINION AND ORDER

In July 2017 Standard Insurance hired Brett Miller, who was under Plaintiff's supervision and served as a mid-level manager for a team that included Schmalle and McGillicuddy.

In October 2017 Schmalle and McGillicuddy began voicing regular complaints about Miller to others, including Plaintiff. Plaintiff attempted to respond to these complaints, but Schmalle and McGillicuddy remained dissatisfied and blamed Plaintiff for his "perceived inaction and/or continued support of Miller."

In December 2017 Miller issued a disciplinary warning to McGillicuddy based on complaints made by other employees about McGillicuddy.  McGillicuddy complained to Schmalle about this incident, and McGillicuddy and Schmalle "continued to blame and harbor further animus toward [P]laintiff based on his perceived role in the incident and his perceived support of Miller's conduct."

In February or March 2018 Plaintiff and Miller lodged complaints with Standard Insurance's Human Resources Department (HR) about McGillicuddy's "continuing unprofessional and disruptive conduct," but HRworkforce personnel "resisted" Plaintiff's complaints and "began to harbor personal animus" toward him.  About the same time Schmalle also made complaints to Plaintiff about McGillicuddy, but he was "reluctant" to take

3 - OPINION AND ORDER

his complaints to HR due to his prior working relationship with McGillicuddy.

In early March 2018 McGillicuddy tendered her resignation to Standard Insurance, but she was allowed to work from home until her employment formally ended on March 31, 2018. Plaintiff alleges both McGillicuddy and Schmalle blamed Plaintiff for McGillicuddy's decision to resign, and they "harbored further personal animus" toward Plaintiff.

In "early 2018" Standard Insurance advised Plaintiff that his position was being eliminated due to "corporate restructuring decisions."  In lieu of being terminated and paid a severance package, Standard Insurance offered Plaintiff the alternative to be in the "Workforce Redeployment Pool Option" (Pool).  While in the Pool Plaintiff would remain an employee, would continue to receive pay and benefits, and would be allowed to seek another position with Standard Insurance.  Plaintiff was required to sign a "Release and Severance Agreement" (RSA).  The RSA required Plaintiff (1) to work cooperatively with Standard Insurance if directed by his manager until his "position end date" of April 16, 2018; (2) to sign and to return the RSA before his position end date; and (3) to sign and to not revoke a "Supplemental Release of Claims" (Release) at the end of the

Pool.  In return for signing the RSA and Release, Plaintiff would be placed in the Pool of terminated employees, would be eligible for severance benefits but lower compensation, and would be able to seek another position with Standard Insurance. The RSA provided Plaintiff's employment would end and Plaintiff would receive less severance pay if he turned down or did not find a comparable position with Standard Insurance.

On April 16, 2018, Plaintiff executed the RSA and Release. From April 16, 2018, to September 11, 2018, Plaintiff was a participant in the Pool.

At some point Schmalle told McGillicuddy that Plaintiff's position had been eliminated and that Plaintiff was in the Pool. From April through August 2018 Schmalle and McGillicuddy "communicated regularly about [P]laintiff and expressed their mutual pleasure at the elimination of [Plaintiff's] position and [the] anticipated eventual termination of his employment by Standard."

On August 19, 2018, Schmalle sent an email to McGillicuddy claiming Plaintiff had "lied" to him about McGillicuddy and/or had suggested Schmalle lodge false complaints about McGillicuddy with Standard Insurance's HR department.

McGillicuddy forwarded Schmalle's email to Standard

Insurance's HR department in retaliation for Plaintiff's perceived mistreatment of her and Plaintiff's "perceived" role in her resignation.  McGillicuddy's email triggered Standard Insurance's investigation of Plaintiff.

As a result of HR's investigation Plaintiff was terminated as a member of the Pool and fired on September 11, 2018.

On December 19, 2019, Plaintiff filed a Complaint against Defendants.  Plaintiff alleges a common-law breach-of-contract claim against Standard Insurance in Count 1 of his First Claim. In Count 2 of his First Claim Plaintiff alleges Standard Insurance wrongfully denied him benefits that he was entitled to pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*  Plaintiff alleges in his Second Claim that Standard Insurance wrongfully terminated his employment in violation of § 1140 of ERISA.  In his Third Claim Plaintiff alleges Standard Insurance breached its fiduciary duties required by ERISA.  In his Fourth Claim Plaintiff alleges Schmalle and McGillicuddy tortiously interfered with his employment contract with Standard Insurance.  Plaintiff seeks damages of at least $80,000, including damages for loss of severance pay and benefits.

On March 2, 2020, Standard Insurance filed a Motion to

Dismiss Plaintiff's common-law breach-of-contract claim.  On
March 3, 2020, McGillicuddy filed a Motion to Dismiss
Plaintiff's claim.  On March 25, 2020, Schmalle also filed a
Motion to Dismiss Plaintiff's tortious-interference claim.
Defendants contend these claims are preempted by ERISA.

McGillicuddy also moves in the alternative to dismiss
Plaintiff's tortious-interference claim against her for failure
to state a claim pursuant to Federal Rule of Civil Procedure
12(b)(6).

## STANDARDS

### I.   Motion to Dismiss

To survive a motion to dismiss a complaint must contain
sufficient factual matter, accepted as true, to "state a claim
for relief that is plausible on its face." *Bell Atlantic v.
Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged.  *Id.* at 556.
"The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that
a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546).  When a complaint is based on facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  *See also Bell Atlantic*, 550 U.S. at 555-56.  The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).  Nonetheless, the court is not bound to "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  *See also, Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1205 (9th Cir. 2019).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  *See also* Federal Rule of Civil Procedure 8(a)(2).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).  A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP*, *Inc.,* 146 F.3d 699,706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.,* 443 F.3d 676 (9th Cir. 2006)).

## II.  ERISA Preemption

In *Aetna Healthcare Inc. v Davila* the Supreme Court explained ERISA preemption as follows:

> Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a

federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).

ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." *Russell*, 473 U.S., at 147 (internal quotation marks omitted).  This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA.

* * *

Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.  *See* 481 U.S. at 54-56; *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990).

542 U.S. 200, 208 (2004).

Under ERISA an action is preempted only when a plaintiff brings claims that "relate to" an ERISA plan within the meaning of 29 U.S.C. § 1144(a) and are within the scope of the ERISA civil-enforcement provision in 29 U.S.C. § 1132(a).  *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1171 (9th Cir. 2004). *See also Toumanjian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998).

## DISCUSSION

**I.   Plaintiff's common-law breach-of-contract and tortious-interference claims are not preempted by ERISA.**

Defendants each contend Plaintiff's claims against them "relate to" Standard Insurance's Severance Pay Plan, which is an ERISA plan, and the claims, therefore, are preempted by ERISA. Defendants also contend Plaintiff's claims are preempted on the ground that Plaintiff's claims do not arise under any "independent legal duty" outside of ERISA.  In fact, according to Defendants, Plaintiff alleges Standard Insurance's motivation for terminating Plaintiff was to avoid paying ERISA benefits.

Plaintiff does not dispute Standard Insurance's Severance Pay Plan is an "employee benefit plan" under ERISA.  Plaintiff, however, contends ERISA's preemption provisions do not apply to Plaintiff's state common-law or statutory claims because they do not directly impact or interfere with the administration of an ERISA plan.

**A.    Plaintiff's claims do not "relate to" the administration of an ERISA Plan and, therefore, are not preempted.**

Defendants contend Plaintiff seeks severance pay created by Standard Insurance's Severance Pay Plan, which, as noted, is an employee benefit plan under ERISA, and, therefore, Plaintiff's claim is "related to" the administration of an ERISA Plan and is preempted by ERISA § 514(a).

Plaintiff, however, contends his breach-of-contract

and tortious-interference claims do not relate to the

administration of a benefits plan nor implicate the payment of

severance benefits under ERISA because (1) Standard Insurance

did not have the contractual right to terminate Plaintiff's

employment or membership in the Pool based on misconduct

that allegedly occurred before the RSA was signed and

(2) Plaintiff's tortious-interference claim against Schmalle and

McGillicuddy is based on their improper interference with his

contract with Standard Insurance.

> Section 514 of ERISA provides:

>> [T]he provisions of this subchapter . . . shall
>> supersede any and all State laws insofar as they
>> may now or hereafter relate to any employee
>> benefit plan in § 1003(a) of this title. . . .
>> 29 U.S.C. § 1144(a).

Section 514 of ERISA preempts a state-law claim when the state-

law claim "relates to" an ERISA benefit plan.  In *Fort Halifax

Packing Co. v. Coyne* the Supreme Court clarified preemption

under § 514 was intended to avoid state statutory schemes that

conflicted with ERISA standards for administration of ERISA

plans rather than laws relating to the payment of employee

benefits.  481 U.S. 1 (1987).  The Court stated:

>> ERISA's preemption provision does not refer to
>> state law relating to "employee benefits," but to
>> law relating to "employee benefit *plans*". . . .

12 — OPINION AND ORDER

> We have held that the words "relate to"
> should be construed expansively. . . .  Nothing
> in our case law, however, supports appellant's
> position that the word "plan" should in effect be
> read out of the statute. . . .  The words
> "benefit" and "plan" are used separately
> throughout ERISA, and nowhere in the statute are
> they treated as the equivalent of one another.
> Given the basic difference between a "benefit"
> and a "plan," Congress' choice of language is
> significant in its pre-emption of only the
> latter.

482 U.S. 7-8 (emphasis in original).

Plaintiff's breach-of-contract claim relates to the provisions of the express written contract between Plaintiff and Standard Insurance and turns on whether Standard Insurance had a contractual right to terminate Plaintiff's employment. Plaintiff's tortious-interference claim relates to whether Schmalle and McGillicuddy's actions interfered with the contractual relationship between Plaintiff and Standard Insurance.  Neither claim, however, relates to the regulation or administration of the plan itself or to the determination of severance benefits.

Defendants contend Plaintiff's claims relate to ERISA on the ground that Plaintiff seeks recovery of pension benefits as part of his damages.

In *Campbell v. The Aerospace Corp.,* 123 F.3d 1308 (9th Cir. 1997), the plaintiff alleged he was wrongfully terminated

for his whistleblowing activities, and he sought damages that
included the loss of substantial pension benefits.  The
plaintiff ultimately lost at trial, but on appeal he claimed the
case was wrongfully removed from state court.  The Ninth Circuit
questioned the district court's jurisdiction and whether the
plaintiff's case had been wrongfully removed under ERISA
preemption.  The Court noted:

> A claim does not relate to ERISA "when the loss
> of pension benefits was a *mere consequence of,
> but not a motivating factor behind,* the
> termination of benefits." [citing *Ethridge v.
> Harbor House Restaurant,* 861 F.2d 1389, 1405 (9th
> Cir. 1988)](quotation omitted)(emphasis added).
> In *Ethridge,* the plaintiff brought a claim for
> tortious discharge in state court, alleging that
> he was terminated from his employment in
> retaliation for his union activities.  In his
> complaint, Ethridge asserted that "the above said
> wrongful acts of Defendants, w[ere] a substantial
> factor in causing damage and injury to Plaintiff,
> including loss of employment and benefits."  *Id.*
> at 1404 (alterations omitted).  Relying on the
> plaintiff's use of the word "benefits," the
> defendants attempted to remove the case to
> federal court on the ground of ERISA preemption.
> We rejected their argument.  Ethridge did not
> claim that his employer's true motivation for
> discharge was to deprive him of pension rights,
> but merely alleged that the loss of benefits was
> a consequence of the tortious discharge.  *Id.* at
> 1405.  Therefore, Ethridge's claim for tortious
> discharge was not preempted simply because he
> sought to recover lost salary and benefits.
>
> Similarly, in *Karambelas v. Hughes Aircraft Co.,*
> 992 F.2d 971, 974 (9th Cir. 1993), the plaintiff,
> former in-house counsel for the defendant,

brought a breach of employment contract claim, alleging that his employer terminated him because it needed a scapegoat after a costly legal error. Defendants sought to justify removal by pointing to plaintiff's acknowledgment, in his deposition, that one reason for his termination was probably to avoid the vesting of his pension rights.  We rejected this contention, reasoning:

> Here the heart and soul of the complaint is Karambelas' outrage at the fact that he was made a scapegoat. . . .  His complaint does mention that he was terminated just before his retirement benefits vested, but that was clearly in the nature of a jeremiad or, at most, a consequence of the scapegoating wrong that was perpetrated upon him.

*Id.*  Again, mention of the loss of benefits as a consequence of termination did not give rise to ERISA preemption where the employer was motivated by other concerns.

*Campbell*, 123 F.3d at 1312-13 (emphasis in original).

Here Plaintiff alleges a loss of pension benefits merely as an element of his damages.  On this record, therefore, the Court concludes Plaintiff's common-law claims for breach of contract and tortious interference do not relate to the administration or regulation of an ERISA benefits plan. Accordingly, the Court concludes Plaintiff's claims are not preempted by ERISA.

**B.    Plaintiff's claims are independent of any legal duty under ERISA and not preempted.**

Defendants also contend Plaintiff's claims are

preempted under the civil-enforcement mechanism of § 502(a) of
ERISA on the grounds that Plaintiff could have brought his claim
under ERISA and, moreover, Defendants' actions do not implicate
any other independent legal duty.  In other words, when "the
existence of an ERISA plan is a critical factor in establishing
liability under a state cause of action, the state law claim is
preempted." *Wise v. Verizon Commc'ns, Inc.*, 600 F. 3d 1180,
1190-91 (9th Cir. 2010).

Here Plaintiff's claims do not "depend" on the
existence of an ERISA-covered plan to establish that Plaintiff
suffered damages.  Plaintiff has alleged Standard Insurance
improperly terminated his employment in violation of the terms
of the RSA, and McGillicuddy and Schmalle acted with wrongful
and improper motives to interfere with Plaintiff's employment.
The Oregon Court of Appeals has held tortious-interference
claims arising in a workplace setting are actionable against a
defendant who "retaliated for personal reasons against an
employee for that employee's complaints" about the defendant's
conduct in the workplace.  *Kaelon v. USF Reddaway, Inc.*, 180 Or.
App. 89, 100 (2002).

Similar to the conduct of Standard Insurance, the
conduct of Schmalle and McGillicuddy was not related to any duty

16 — OPINION AND ORDER

that related to or included administration of the ERISA benefits plan.  Plaintiff also does not allege either Schmalle or McGillicuddy acted as Standard Insurance's agent, and McGillicuddy was neither an employer nor an employee of Standard Insurance at the time of her conduct.  In *Great American Life Ins. Co. v. Castonguay* the Ninth Circuit noted:  "To determine whether a state law is preempted we must look at whether it encroaches on the relationships regulated by ERISA. . . .  Under this approach, the first question we must ask is whether the state law reaches a relationship that is already regulated by ERISA."  984 F.2d 1518, 1522 (9th Cir. 1993).  Plaintiff does not allege, nor can it be inferred that the relationship between Plaintiff, Schmalle, and McGillicuddy was regulated by ERISA. Moreover, the facts alleged by Plaintiff would indicate Schmalle and McGillicuddy may have acted with a motivation to interfere with Plaintiff's employment outside of the scope of Standard Insurance's ERISA plan.

On this record the Court concludes Plaintiff has asserted Defendants' actions were based on an independent legal duty outside of any ERISA enforcement mechanism.  Accordingly, the Court concludes Plaintiff's claims are not preempted.

**C.   Plaintiff has not alleged Standard Insurance's actions were "motivated by" a desire to avoid paying ERISA**

**benefits.**

Defendants also contend Plaintiff alleges the motive behind Standard Insurance's action was to avoid paying an ERISA benefit to Plaintiff, and, therefore, Plaintiff's claims are preempted by ERISA § 510.

Plaintiff again contends the lost severance pay benefits are only part of the general damages he seeks, and Standard Insurance's failure to pay benefits is not a substantive element of his breach-of-contract claim.  As noted, a claim does not relate to ERISA "when the loss of pension benefits was a mere consequence of, but not a motivating factor behind the termination of benefits." *Campbell*, 123 F.3d at 1312.  The Supreme Court has also held when employees bring statutory claims under legal theories that, by their very nature, are highly likely to involve the loss of pensions or other employee benefits as compensatory damages, ERISA's preemption does not apply even though the employee may allege alternative claims suggesting that the goal of avoiding pension or ERISA plan liabilities was a motivating factor behind the wrongful employment action.  *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 613 (1993)("Nor do we rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire

the employee was motivated both by the employee's age and by his pension status.").

Plaintiff alleges in Count 1 of his First Claim that Standard Insurance improperly terminated him under the RSA resulting in a breach of the contract between Plaintiff and Standard Insurance, and, therefore, Plaintiff seeks damages that include, among other things, severance benefits owed under the RSA.

On this record the Court concludes Plaintiff is seeking severance damages in Count 1 of his First Claim as a consequence of Standard Insurance's alleged breach of contract. Accordingly, the Court concludes Plaintiff's claim is not preempted by ERISA § 510.

In summary, the Court concludes Plaintiff's common-law claims against Defendants for breach of contract and tortious interference are not preempted by ERISA law.

## II.  Plaintiff has adequately stated a claim against McGillicuddy.

McGillicuddy alternatively contends Plaintiff has failed to adequately state a claim for tortious interference against her.

### A.  Standards

Under Oregon law a party must allege the following elements to state a claim for tortious inference with a

contract:  (1) the existence of a professional or business
relationship (which could include, for example, a contract or a
prospective economic advantage), (2) intentional interference
with that relationship, (3) by a third party, (4) accomplished
through improper means or for an improper purpose, (5) a causal
effect between the interference and damage to the economic
relationship, and (6) damages.  *Int'l Longshore & Warehouse
Union v. ICTSI Oregon, Inc.*, 15 F. Supp. 3d 1075, 1105 (D. Or.
2014), *aff'd,* 863 F.3d 1178 (9th Cir. 2017).

    **B.  Analysis**

        McGillicuddy contends Plaintiff has failed to allege
sufficient facts to show that McGillicuddy knew or had reason to
know the information she received from Schmalle and relayed to
Standard Insurance's HR Department was false or misleading or to
show that McGillicuddy's actions violated any established
standard.

        In his Complaint Plaintiff alleges the following:
McGillicuddy blamed Plaintiff for McGillicuddy's decision to
resign and harbored "personal animus" toward Plaintiff as a
result.  McGillicuddy regularly communicated with Schmalle after
her resignation.  When McGillicuddy and Schmalle learned
Plaintiff's position had been eliminated, they "expressed their

mutual pleasure at the elimination of [Plaintiff's] position and anticipated eventual termination of [Plaintiff's] employment." Plaintiff also alleges Schmalle sent an email to McGillicuddy falsely claiming that before McGillicuddy resigned Plaintiff had "lied" to Schmalle about McGillicuddy and/or suggested that Schmalle lodge false complaints about McGillicuddy with Standard Insurance's HR department.  Plaintiff alleges McGillicuddy "promptly related [Schmalle's email] to Standard Insurance's HR department in retaliation for Plaintiff's perceived mistreatment of her, and his assumed role in her eventual resignation." Plaintiff further alleges the investigation by Standard Insurance's HR Department, triggered by McGillicuddy's email, was specifically intended to interfere with Plaintiff's contractual relationship with Standard Insurance.

As noted, to survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 545.  A claim has facial plausibility when the plaintiff pleads sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.

On this record the Court concludes Plaintiff has

21 — OPINION AND ORDER

stated sufficient facts to support a claim plausible on its face
that McGillicuddy tortuously interfered with Plaintiff's
contractual relationship with Standard Insurance.  Accordingly,
the Court denies McGillicuddy's alternative motion to dismiss
for failure to state a claim.

## CONCLUSION

     For the reasons stated, the Court **DENIES** Defendants'
Motions (#9), (#10), and (#13) to Dismiss.

     The Court **DIRECTS** the parties to confer and to file **no
later than June 30, 2020,** a proposed case-management plan.  The
Court will then set a Rule 16 Conference in due course.

     IT IS SO ORDERED.

     DATED this 8th day of June, 2020.

                         /s/ Anna J. Brown

                         _____
                         ANNA J. BROWN
                         United States Senior District Judge